**Divco-Wayne Sales Financial Corporation, Plaintiff-Appellant, v. Martin Vehicle Sales, Inc., Defendant-Appellee and Cross-Appellant.**

Gen. No. 49,016.

First District, Second Division.
November 22, 1963.
Rehearing denied December 18, 1963.

Tenney, Bentley, Guthrie & Howell, all of Chicago (John P. Forester and Stephen J. Nagy, of counsel), for appellant.

Melvin M. Landau, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court:

Divco-Wayne Sales Financial Corporation brought a replevin action against Martin Vehicle Sales, Inc., for possession of seven hearses. Martin filed a counterclaim against plaintiff, Sales Financial, for commissions allegedly due under a contract with Divco-Wayne Corporation. The plaintiff, Sales Financial, filed a counterclaim against Martin for a judgment for principal, interest and attorney's fees on four notes executed by Martin the nonpayment of which had formed the legal basis for the replevin action. Two trials were had without a jury. The replevin action was tried in September 1961, ending in judgment for plaintiff for possession of the vehicles seized. The correctness of this judgment is not challenged in the instant case. The respective counterclaims were tried in May, 1962. Plaintiff, Sales Financial, was found entitled to the principal balance due on the four notes (less a credit to Martin for the amount received on a sale of the replevied property), but was denied the interest and attorneys' fees provided for in the notes. The commission allegedly due Martin under the contract with the parent corporation, Divco-Wayne Corporation, was awarded in full against the subsidiary, Sales Financial. After adjusting the respective credits the court entered a judgment for $7,608.67 in favor of Martin and against Sales Financial. Plaintiff appeal-

ing, asks that the judgment be reversed, that Martin's counterclaim be dismissed, that judgment be entered for plaintiff for the principal on the notes, $28,176.40, plus interest from July 1, 1960, and attorney's fees of 15% found to be due for principal and interest, less a credit of $3,600 to Martin representing the proceeds of the replevied vehicles. In its cross-appeal Martin asks that the judgment be modified to declare that the retention of the seven vehicles for an unreasonable period without a public sale constituted an acceptance of the vehicles as payment for the trust receipt notes and that judgment be entered against plaintiff for the balance of the commission, $32,185.07, or in the alternative a judgment be entered against plaintiff for $33,-008.67.

Plaintiff maintains that the counterclaim does not state a cause of action against it and that its motion to dismiss should have been allowed. The exhibit attached to Martin's counterclaim is not an agreement between plaintiff and Martin. It is a contract between Martin and Divco-Wayne Corporation. The allegation in the counterclaim that Martin entered into an agreement with plaintiff is inconsistent with the exhibit. Where exhibits are relied upon for recovery and there is a discrepancy between the allegations of the complaint and the exhibits, the exhibits are controlling and the language of the exhibits will be taken as the factual basis upon which the complaint is predicated. Benner v. Hudelson Baptist Home, 24 Ill App2d 256, 164 NE2d 252; Nagel v. Northern Illinois Gas Co., 12 Ill App2d 413, 419–20, 139 NE2d 810; Awotin v. Abrams, 309 Ill App 421, 33 NE2d 179; Woods v. First Nat. Bank of Chicago, 314 Ill App 340, 41 NE2d 235. The counterclaim does not state a cause of action against Sales Financial as the exhibit evidences a contract with Divco-Wayne Corporation and not with Sales Financial.

The evidence is uncontroverted that Sales Financial, although a wholly owned subsidiary, is a separate corporation independent of the parent. The principle that a corporation is an entity separate from its shareholders and from other corporations with which it may be associated has long been recognized in Illinois, as it has universally in the United States. Donnell v. Herring-Hall-Marvin, 208 US 267, 273; Loewenthal Securities Co. v. White Paving Co., 351 Ill 285, 295, 184 NE 310. In the Donnell case Mr. Justice Holmes said, p 273: "A leading purpose of such statutes and of those who act under them is to interpose a non-conductor, through which, in matters of contract, it is impossible to see the men behind." In Superior Coal Co. v. Department of Finance, 377 Ill 282, the court said, p 289, 36 NE2d 354: "Ownership of capital stock in one corporation by another does not, itself, create an identity of corporate interest between the two companies, nor render the stockholding company the owner of the property of the other, nor create the relation of principal and agent, representative, or *alter ego* between the two. [Cases cited.] Nor does the identity of officers of two corporations establish identity of the corporations." Divco-Wayne Corporation is engaged in the business of manufacturing vehicles. Sales Financial is in the business of financing vehicles. Sales Financial had a net worth of approximately $500,000 and an independent bank credit of $8,000,000 not guaranteed by the parent. Only two of the eight directors of Divco-Wayne Corporation were on the Board of Sales Financial. None of the three Martin brothers, who acted for the defendant, asserted that he was misled by the existence of these two corporations.

 The relationship of parent and subsidiary corporation will not, standing alone, render the subsidiary liable on the parent's contract. American

Cyanimid Co. v. Wilson & Toomer Fertilizer Co., 51 F2d 665; First Nat. Bank of Seattle v. Walton, 146 Wash 367, 262 P 984, 986. The decisions on this point are collected in an annotation in 102 ALR 1054, entitled "Liability of holding corporation on contracts of subsidiary," where the annotator says: "As stated in the original annotation on this subject, a holding company is not, as a general rule, liable on the contracts of its subsidiary corporation."

■■■ One who seeks to have the Court apply an exception to the rule of separate corporate existence, must seek that relief in his pleading and carry the burden of proving actual identity or a misuse of corporate form which, unless disregarded, will result in a fraud on him. Martin did not assert in any of its pleadings that Sales Financial and Divco-Wayne Corporation were one and the same or that it had been misled, nor did it ask the court to disregard corporate form in order to prevent a fraud from being perpetrated. In John Sexton & Co. v. Library Plaza Hotel Corp., 270 Ill App 107, the court said, p 110: "Confusion often results from the operation of various related corporations especially where names similar in sound are used. It cannot be said, however, that this fact alone creates a joint liability. There must be something more, such as a commingling of interests, a joint ownership, or a holding out to the world such as would mislead or tend to lull one into a mistake of fact." The Martins had been dealers in Divco-Wayne professional cars for several years prior to the signing of the contract exhibited in this case. The three Martins testified and not one of them asserted that he was confused or misled by these two corporations or that they or the Martin Company were in any manner defrauded because of the two corporations. There is no basis in the evidence justifying the court in refusing to treat the two corporations as separate entities.

The burden was upon Martin to prove either (1) identity in fact, or (2) the fraudulent misuse of corporate form. This it failed to do. The judgment against Sales Financial for commissions allegedly owed not by it but by Divco-Wayne Corporation has no basis in law. The same claim for commissions has been brought against the parent corporation in the U. S. District Court for the Northern District of Illinois, Eastern Division, where it is presently pending.

■ Defendant maintains that the exceptional procedure in this case is justified because otherwise it will be required to go to "another jurisdiction" to sue the parent corporation for commissions. This assertion has no validity because the parent corporation is amenable to Illinois process under Sec 17 of the Civil Practice Act, since the contract sued on constitutes the transaction of business within this State, subjecting it to jurisdiction of the courts of this State. As indicated the defendant has the same counterclaim pending against the parent corporation in the United States District Court. We are of the opinion that no facts were alleged or proved to except Martin from following the established rule of civil procedure by which claims are asserted and jurisdiction over the person of a defendant is acquired. Martin was not confused or misled. It deliberately chose not to join the parent as a defendant in the law suit. This choice will not relieve it from the consequences of its act.

■ The judgment of the trial court is also erroneous in that it denies to plaintiff the interest and attorney's fees provided in the notes sued on. As to three of the four notes sued on, no defense whatever to the claim is made. As to the remaining note defendant says that it was not the intention of the parties that this note contain provisions for interest or attorney's fees, yet the note was signed and delivered by experienced businessmen who are presumed to know

198

the contents of these instruments. Defendant did not by any pleading seek reformation of the terms of the instrument; nor does the record contain that strong and convincing evidence which the law requires to justify reformation. The policy reasons for such a rule are the same as those forbidding parol evidence to vary the terms of a written contract. In Armstrong Paint & Varnish Works v. Continental Can Co., 301 Ill 102, the court said, p 106, 133 NE 711: "When parties sign a memorandum expressing all the terms essential to a complete agreement they are to be protected against the doubtful veracity of the interested witnesses and the uncertain memory of disinterested witnesses concerning the terms of their agreement, and the only way in which they can be so protected is by holding each of them conclusively bound by the terms of the agreement as expressed in writing. All conversations and parol agreements between the parties prior to the written agreement are so merged therein that they can not be given in evidence for the purpose of changing the contract or showing an intention or understanding different from that expressed in the written agreement."

■ No defense was offered by pleading or proof as to interest or attorney's fees on notes B, C, and D. There was no mutual mistake as to the demand or interest provisions of note A. Martin is liable on that note according to its terms. The proper remedy for a mutual mistake is a complaint in equity for a reformation of the instrument in which the mistake is alleged to exist. Martin failed to seek this remedy, nor did it allege facts in its answer to Sales Financial's counterclaim from which the conclusion of mutual mistake could follow; nor does the record contain proof that any mutual mistake occurred. In Christ v. Rake, 287 Ill 619, the court said, p 622, 122 NE 854: "A written instrument will not be reformed on the

199

ground of mistake unless the evidence that it does not express the intention of the parties is such as will strike all minds alike as being unquestionable and free from reasonable doubt. The remedy of reformation on account of an alleged mistake is never granted upon a probability nor upon a mere preponderance of the evidence but only upon evidence amounting to a certainty." The presumption that the provisions of note A express the mutual intent of the parties is strengthened by the evidence. Furthermore, the proof does not warrant reformation under a proper pleading.

Defendant states that by retaining the seven vehicles without selling them at a bona fide sale Sales Financial, plaintiff, exercised the election contained in the trust receipts to keep the vehicles and cancel the indebtedness. Defendant further states that the sale was wilfully made in a market where fair value could not be realized and that by means of a "mock" sale the plaintiff purchased the vehicles worth $30,000 for $3,600. Six of the replevied vehicles were offered at public sale on November 3, 1961, at Piqua, Ohio. The seventh vehicle, a 1952 model, was turned over to the custodian in payment of storage charges and sold to a salvage dealer for $100. The notice of the Piqua sale was published twice in the Dayton Daily News and notices were given by mail and telephone to several dealers. Ten people came to the auction and bids of from $100 to $150 per vehicle were made. Plaintiff thereupon elected to bid $600 each or $3,600 for the six vehicles. The trial judge heard the evidence as to the time, place and manner of conducting the sale and the testimony as to the value of the vehicles. The evidence of value is conflicting and ranged from $21,000 as testified to by Glen Martin, defendant's Sales Manager, to $5,300 as testified by Robert Rossiter, Divco-Wayne Corporation's Sales Manager. De-

200

fendant attempted in May 1961 to hold an auction sale of these and several other vehicles in Chicago and sent out 23,000 direct mail letters concerning the sale on two mailings to funeral directors throughout the United States. Will Martin testified that only two people showed up. Glen Martin testified that about six people appeared at the sale. The auction sale by Martin was called off for want of interest. Where a case is tried without a jury the trial judge's conclusions of fact are entitled to the same weight as a jury verdict. We conclude that the finding relative to the method of sale and the value of the vehicles sold is not against the manifest weight of the evidence. See Brown v. Zimmerman, 18 Ill2d 94, 102, 163 NE2d 518; Bulldog Concrete Forms Sales Corp. v. Taylor, 195 F2d 417, 426–27.

■■ Restatement of the Law of Security, Sec 50, says that one complaining of a sale by a pledgee has three remedies: (1) he may have the sale set aside so that the pledge remains unaffected; (2) he may sue the pledgee for damages; (3) he may recover the pledged chattels in kind. The defendant has sought none of these remedies. It has not asked that the sale be set aside nor that the replevied vehicles be returned to it. It did, in fact, agree that a sale might be had. It stipulated that immediate sale of the vehicles might be had and waived any right to receive the vehicles in kind. The defendant has not sought damages, which would be the fair market value of the vehicles on the date of sale. Instead of seeking any of these remedies, defendant argues that the manner, place and circumstances of the sale constituted an "election" by which the plaintiff agreed to accept the vehicles in kind and cancel the debt. An election is a choice, shown by an overt act, between inconsistent rights, either of which may be asserted at the will of the

chooser alone. Moran v. Union Bank of Chicago, 352 Ill 503, 508, 186 NE 182. There is no evidence that the plaintiff "elected" to accept the vehicles in full payment of the debt. All the evidence is to the contrary.

For these reasons the judgment is reversed and the cause is remanded with directions to enter a judgment for Divco-Wayne Sales Financial Corporation, plaintiff, and against Martin Vehicle Sales, Inc., defendant, for $28,176.40, plus interest at 6% per annum on that amount from July 1, 1960 to the day judgment is entered, plus attorney's fees of 15% of the amount found to be due for principal and interest less a credit to Martin Vehicle Sales, Inc., of $3,600, with a proportionate credit to Martin Vehicle Sales, Inc., of the interest on $3,600 at 6% per annum from November 3, 1961, when the vehicles were sold; and that judgment be entered against Martin Vehicle Sales, Inc., and for Divco-Wayne Sales Financial Corporation on the counterclaim of Martin Vehicle Sales, Inc., that the latter take nothing by its counterclaim and go hence without day.

Judgment reversed and cause remanded with directions.

FRIEND and BRYANT, JJ., concur.