SOUTH SIDE BANK, Plaintiff-Appellant, *v.* T. S. B. CORPORATION *et al.*, Defendants-Appellees.

First District (5th Division)    No. 79-2063

Opinion filed March 27, 1981.

Block, Levy & Becker, Chartered, of Chicago, for appellant.

Edward J. Burke & Associates, Chartered, of Chicago, for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff filed a complaint seeking a writ of *mandamus* in the circuit court to compel T. S. B. Corporation (T. S. B.) to produce for inspection certain of its corporate records along with those of its subsidiary, Tri-State Bank (Tri-State). The trial court entered an order granting defendants' motion to strike and dismiss plaintiff's complaint as insufficient in law with respect to the inspection of Tri-State's records. Thereafter, plaintiff took a nonsuit as to the complaint with respect to the records of T. S. B.

The question before us is whether plaintiff, a shareholder in T. S. B., has the right under the provisions of the Business Corporation Act (Ill. Rev. Stat. 1979, ch. 32, par. 157.1 *et seq.*) to examine the records of Tri-State Bank, the subsidiary of T. S. B., even though plaintiff only owns stock in the parent company.

Plaintiff's complaint alleges in summary as follows:

That it owns 1,000 common shares, or about 4.75%, of the issued and outstanding capital stock of T. S. B.; that the principal business and major asset of T. S. B. is the ownership of over 90% of the capital stock of Tri-State; that over six months subsequent to its acquisition of stock in T. S. B. it demanded T. S. B. to make available for inspection certain of its records and those of Tri-State, which included the following: shareholder lists, shareholder minutes and director minutes, profit and loss statements and balance sheets, U.S. Income Tax Returns, officers and directors compensation reports, general ledgers, consolidated income tax returns, F.D.I.C. reports, State of Illinois reports, independent C.P.A. reports, and shareholder, director and officer loan reports; that the demand constituted the only way of determining the value of plaintiff's shares in T. S. B. since

T. S. B. was a closely held corporation not listed in any stock exchange or other ready market; and that T. S. B. questioned plaintiff's right of access to the requested records, along with its purpose in inspecting them, and refused to tender the documents.

Along with a request for a writ of *mandamus* compelling T. S. B. to produce the records for inspection, plaintiff's complaint prayed for a judgment against T. S. B., and David Robinson and Arthur King (officers of T. S. B.) for a penalty equal to 10% of the value of plaintiff's stock, plus costs of suit.

OPINION

Plaintiff's first contention is that it has a right to compel T. S. B. to produce for inspection corporate records of Tri-State even though plaintiff owns no stock in the latter.

A stockholder's right to inspect corporate records is governed by section 45 of the Illinois Business Corporation Act (the Act), which provides in pertinent part as follows:

> "* * * Any person who shall have been a shareholder of record or the holder of a Voting Trust Certificate for at least six months immediately preceding his demand or who shall be the holder of record of at least five per cent of all the outstanding shares of a corporation, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its books and records of account, minutes and records of shareholders and to make extracts therefrom." Ill. Rev. Stat. 1979, ch. 32, par. 157.45

A plain reading of section 45 reveals that the right to inspect a corporation's records extends only to those who are shareholders in the corporation. It grants no privileges to those, like plaintiff, who only own shares in a corporation which is the parent company of the one to which the request is made. Our research shows that plaintiff's request for the benefits under the Act presents a question of first impression in this State. We shall therefore look to other jurisdictions for guidance on this topic.

Generally, the ownership of stock in a corporation which owns stock of another corporation does not carry with it the constitutional and statutory right of inspection of the books and records of the latter corporation. (5 Fletcher, Cyclopedia of Corporations §2230 (1976).) Some jurisdictions have allowed shareholders to inspect the records of a subsidiary of a corporation in which they held shares where the latter was the mere instrumentality of the former. (See, *e.g., Bailey v. Boxboard Products Co.* (1934), 314 Pa. 45, 170 A. 127; *Williams v. Freeport Sulphur Co.* (Tex. Civ. App. 1930), 40 S.W.2d 817; *Woodworth v. Old Second National Bank* (1908), 154 Mich. 459, 117 N.W. 893.) The courts of other States have

denied shareholders the right where there has been no showing that the subsidiary is in fact the mere alter ego of the parent or that fraud has occurred. See *Skouras v. Admiralty Enterprises, Inc.* (Del. Ch. 1978), 386 A.2d 674; *Lisle v. Shipp* (1929), 96 Cal. App. 264, 273 P.1103.

In *Lisle*, the District Court of Appeals of California affirmed a decision denying a writ of *mandamus* which sought the inspection of certain corporate records. There, petitioner owned no shares in the corporation, but the president of the corporation also controlled another in which petitioner owned stock. The court found inapplicable decisions which sanctioned the disregard of the separate corporate existence of two business entities in order to allow the shareholders of one corporation to inspect the records of an affiliate. It commented:

"These decisions go no further than to hold that, where company A is the owner of all the stock in company B, and in practical control thereof, so that they are in effect operated as one business, and where a stockholder in company A has made some showing to the effect that the officers in control of the plaintiff's own corporation are misusing their powers for fraudulent or otherwise illegal purposes, and the second company is merely an agency and tool through which the first company operates, the right of inspection will be extended to the books of both corporations. * * * [T]his rule is based upon the power of the court of equity to disregard mere forms for the purpose of discovering and revealing fraud. * * * In determining whether this authority shall be exercised, the Court takes into consideration, not only the character of the court as a court of equity, but the close relationship shown to exist between the corporations, and their identity of management and control. *But the right will not be so exercised under ordinary circumstances and where the two corporations are in fact separate and distinct entities.*" (Emphasis added.) (*Lisle*, 96 Cal. App. 264, 266-67, 273 P. 1103, 1104.)

No facts were presented by the petitioner in *Lisle* that justified his inspection of the corporate records under the test referred to by the court, and relief was therefore denied him.

■■■ For plaintiff to state a cause of action in the present case, it must allege, as the case law illustrates, that Tri-State is the mere alter ego of T. S. B. or that some fraud has occurred. A corporation may be treated as the alter ego of another where there is such a unity of interest and ownership that the individuality of one corporation has ceased, and where the observance of the fiction of separate existence would under the circumstances sanction a fraud by promoting injustice. (See *Ampex Corp. v. Office Electronics, Inc.* (1974), 24 Ill. App. 3d 21, 320 N.E.2d 486.) We believe that plaintiff has not met its burden in this regard. In its complaint,

plaintiff alleged that the principal business and substantial and major asset of T. S. B. was the ownership of in excess of 90% of the capital stock of Tri-State. It contained no other allegations concerning the relationship between T. S. B. and Tri-State or whether any fraudulent transactions had transpired between the two or with any third parties. Ownership of capital stock in one corporation by another does not, itself, create an identity of corporate interest between the two companies, nor render the stockholding company the owner of the property of the other nor create the relation of principal and agent, representative, or alter ego between the two. (*Divco-Wayne Sales Corp. v. Martin Vehicle Sales* (1963), 45 Ill. App. 2d 192, 195 N.E.2d 287.) Therefore, we conclude that plaintiff's complaint was fatally deficient and the trial court correctly dismissed it for its failure to state a cause of action.

Plaintiff also contends that it should be granted an evidentiary hearing to determine whether the relationship between T. S. B. and Tri-State is such that refusing to permit the inspection would work an injustice to plaintiff. This contention is premised upon its belief that the complaint adequately sets out the purpose for which the examination is sought and the relationship between the parties, and thus states a cause of action.

■■■ One who seeks to have the courts apply an exception to the rule of separate corporate existence, however, must seek that relief in his pleading and carry the burden of proving actual identity or a misuse of corporate form which, unless disregarded, will result in a fraud on him. (*Divco-Wayne Sales.*) Plaintiff did not seek to amend its pleadings in order to allege facts sufficient to disregard the separate corporate existence of T. S. B. and Tri-State. The order striking and dismissing plaintiff's complaint recited that plaintiff "elects to stand upon its complaint." When viewed in a light most favorable to plaintiff, no set of facts can be proved under the pleadings which would entitle it to relief. (See *Cipolla v. Bloom Township High School District No. 206* (1979), 69 Ill. App. 3d 434, 388 N.E.2d 31.) Therefore, plaintiff is not entitled to have this cause remanded for evidentiary proceedings.

For the foregoing reasons, the order of the circuit court is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.