LYLE PEDERSON, Plaintiff-Appellant, v. PARAGON POOL ENTERPRISES, Defendant-Appellee (American Titan Company, Defendant).

First District (6th Division)   No. 1—90—1049

Opinion filed May 24, 1991.

816

Michael W. Rathsack, of Chicago (Louis S. Goldstein and Cindy G. Flux-gold, of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Gregory L. Cochran, and Christine L. Olson, of counsel), for appellee.

JUSTICE LaPORTA delivered the opinion of the court:

Plaintiff Lyle Pederson appeals an order granting defendant Paragon Pool Enterprises' motion for summary judgment on the ground that Paragon Pool Enterprises did not manufacture, sell or install the pool and filter system which allegedly caused plaintiff's injury.

Plaintiff raises two issues on appeal: (1) whether the trial court erred in holding that defendant Paragon Pool Enterprises, Inc., was not liable as a matter of law for the installation of the pool or filter which caused plaintiff's injury; and (2) whether Paragon's 4½-year delay in asserting its defense barred or estopped it from raising that defense.

Plaintiff was injured on July 25, 1980, while cleaning a swimming pool and filter at a condominium complex in Waukegan, Illinois. He filed suit against defendant on July 26, 1982, which sounded in negligence and product liability. He did not place summons with the sheriff for service, and on October 27, 1983, he sought and obtained a voluntary dismissal of the action. On October 29, 1984, plaintiff refiled his action, alleging liability against Paragon Pool Enterprises and American Titan Company. The record does not disclose that plaintiff placed summons with the sheriff for service. The case was dismissed for want of prosecution on April 15, 1985, but on plaintiff's motion the court reinstated the action May 20, 1985. Defendant was served April 21, 1985, by special process server and by motion raised the issue of *forum non conveniens*. The record is silent as to any disposition of this motion by the court. On July 16, 1985, the court granted defendant's motion to vacate any and all defaults against him, technical or otherwise, and granted defendant leave to file an appearance and an extension of time to file its answer to September 16, 1985.

Count I alleged that Paragon Pool Enterprises negligently installed a pool and filtering system and failed to warn persons that a ring on the filter might prematurely disengage, causing injury. Count

II alleged that the swimming pool and filtering system were designed, manufactured and sold by Paragon Pool Enterprises and were defective, unreasonably dangerous and unsafe. Counts III and IV alleged the same liability on the part of American Titan Company with regard to the filtering system only. Plaintiff never served American Titan Company, and the company is not part of this appeal.

In its answer Paragon stated a general denial of its involvement in the manufacture, sale or installation of the pool and filter allegedly involved in plaintiff's injury. A subsequent motion filed by defendant indicates that the answer was filed on September 16, 1985.

On July 16, 1986, defendant Paragon moved to dismiss the action pursuant to Supreme Court Rule 103(b) (134 Ill. 2d R. 103(b)), which provides that an action may be dismissed with prejudice where a plaintiff fails to exercise reasonable diligence to obtain service after the expiration of the applicable statute of limitations. On February 19, 1987, the trial court denied defendant's motion to dismiss, finding that although plaintiff failed to exercise diligence in service of summons, defendant had waived its objection to late service by filing its general appearance and answer to the complaint.

The parties participated in discovery until December 8, 1989, when defendant moved for summary judgment pursuant to section 2—1005 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005.) Section 2—1005 permits a court to dismiss an action if it determines that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

In its motion for summary judgment, defendant again stated that it was in no way a participant in the manufacture, sale or installation of the pool and filter system at issue. Defendant noted that it first made this denial in its answer to the second complaint, timely filed five months after defendant was served with summons.

In support of its motion, defendant submitted the affidavit of Ronald Atlas, who was the president and sole shareholder of Paragon Pool Enterprises, Inc., at the time of plaintiff's injury on July 25, 1980. Atlas' affidavit stated that Paragon Pool Enterprises, Inc., was incorporated solely to hold and protect the patent of a particular mooring device called a star dock, a device used in a harbor to moor boats. However, plaintiff is alleged to have been injured by a pool filtering system in a residential setting and not by a mooring device.

Affiant stated that defendant had no employees and was not in the business of manufacturing, selling or installing pools. Affiant acknowledged that in 1980 he was also a 50% shareholder in a company

called Paddock of the Midwest and that he became sole shareholder of that company in 1982. Affiant stated that his review of the books and records of Paddock of the Midwest indicated that the pool and filtering system in the Waukegan condominium complex where plaintiff was injured were installed by Paddock of the Midwest prior to 1980.

On February 14, 1990, plaintiff filed his response to defendant's motion for summary judgment in which he urged the court to deny the motion on two grounds. Plaintiff argued first that Paragon Pools Enterprises was merely the "alter ego" of Paddock of the Midwest and that therefore the court should pierce the corporate veil between the two companies. Plaintiff also argued that defendant was estopped from contending that it was an improper party to the suit because it waited nearly five years to raise the argument and because defendant concealed the existence and possible involvement of Paddock of the Midwest.

In response defendant contended plaintiff failed to provide evidence to justify piercing the corporate veil. Defendant argued that Illinois law provides that common officers and directors and common ownership alone do not justify destroying the protection of corporate ownership. Defendant argued that plaintiff was on notice from the date the answer was filed that he had sued a party who had not manufactured, sold or installed the pool and filter involved. Defendant argued that it did not "conceal" information about the proper defendant or commit fraud by not volunteering information earlier about Paddock of the Midwest. Defendant argued that it should not be penalized for plaintiff's failure to properly investigate the facts which support his case and had he done so he would have learned that Paragon was not the proper defendant.

On March 7, 1990, the trial court granted defendant's motion for summary judgment and dismissed the action against defendant with prejudice. Plaintiff appeals.

On appeal plaintiff contends that the "close ties" between Paragon Pool Enterprises and Paddock of the Midwest are such that the trial court was in error to find the two corporations should not be treated as one by piercing the corporate veil. Plaintiff contends the trial court erred in holding as a matter of law that defendant Paragon was not liable for the installation of the pool and filter.

■ Piercing a corporate veil is a task which courts should undertake reluctantly. (*Sumner Realty Co. v. Willcott* (1986), 148 Ill. App. 3d 497, 501-02, 499 N.E.2d 554, 557.) In order to pierce the corporate veil: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer

exist, (2) and circumstances must be such that an adherence to the fiction of a separate corporate existence would promote injustice or inequitable consequences. *(McCracken v. Olson Cos.* (1986), 149 Ill. App. 3d 104, 109, 500 N.E.2d 487.) A party seeking to have a corporate identity disregarded must come forward with a substantial showing that one corporation is really a dummy or sham for another. *Kelsey Axle & Brake Division v. Presco Plastics, Inc.* (1989), 187 Ill. App. 3d 393, 401, 543 N.E.2d 239, 244.

■ Illinois courts have found several factors that weigh in favor of piercing the corporate veil. Among them: failure to comply with corporate formalities such as electing officers and holding board meetings *(Northwest Suburban Congregation Beth Judea, Inc. v. Rosen* (1982), 103 Ill. App. 3d 1137, 1143, 432 N.E.2d 335), mixing assets of two corporations *(McCracken,* 149 Ill. App. 3d at 110), undercapitalizing one of the corporations *(McCracken,* 149 Ill. App. 3d at 111), and permitting one corporation to act as a business conduit for a dominant corporation ( *Central National Bank v. Fleetwood Realty Corp.* (1982), 110 Ill. App. 3d 169, 181, 441 N.E.2d 1244, 1252).

The use of common officers and directors in and of itself does not render one corporation liable for the obligations of another *(Main Bank v. Baker* (1981), 86 Ill. 2d 188, 204, 427 N.E.2d 94, 101-02), nor does the sharing of office space. *Sumner Realty Co.,* 148 Ill. App. 3d at 502; *Logal v. Inland Steel Industries, Inc.* (1991), 209 Ill. App. 3d 304, 568 N.E.2d 152.

In *Kelsey Axle & Brake Division* the appellate court affirmed a trial court's refusal to pierce the corporate veil between two companies. The court noted that plaintiff provided no evidence of mixing corporate assets, no underfunding of one corporation to benefit the other and no evidence that one was used as a facade in order to permit the other to avoid its responsibilities. *Kelsey Axle & Brake Division,* 187 Ill. App. 3d at 401.

Plaintiff argues that the two corporations should be treated as one because they had common shareholders, business addresses, officers and directors. In addition, Paddock of the Midwest used the trade name Paragon Pools for the pools it installed. Plaintiff contends that where such commonality exists, Illinois courts have pierced the corporate veil which limits liability to find the two corporations constitute one entity. *Holland v. Joy Candy Manufacturing Corp.* (1957), 14 Ill. App. 2d 531, 535, 145 N.E.2d 101, 103; *Federal Insurance Co. v. Maritime Shipping Agencies, Inc.* (1978), 64 Ill. App. 3d 19, 32, 380 N.E.2d 873, 880-81, *superseded by statute as stated in Harris v. Harris* (1990), 196 Ill. App. 3d 815, 555 N.E.2d 10.

In *Holland* the appellate court upheld a trial court ruling that pierced the corporate veil between Joy Candy Manufacturing Corp. and its retail distributor, Candy Shoppes. The court found Candy Shoppes was a "mere instrumentality" of its manufacturer. The court found the affairs of the two companies were managed and controlled by the same officers and directors and a single shareholder so as to constitute one corporate entity in its dealings with creditors. *Holland*, 14 Ill. App. 2d at 535.

In *Federal Insurance Co.*, the trial court considered the relationship between two companies, one with a judgment against it and another incorporated to replace the first. The facts indicated that the first corporation, Maritime, had problems with a client that gave both companies bad reputations so Maritime's owners decided to cease operations as Maritime and open a new company. The new company, Glacier, took on the assets, staff and personal property of Maritime. Admissions by the company owners showed that Glacier was established to avoid potential creditors. Maritime's bank account balance was transferred to Glacier to pay Maritime's bill. The trial court found Glacier and its owners merely "alter egos" of Maritime and that finding was upheld on appeal. *Federal Insurance Co.*, 64 Ill. App. 3d at 32.

Plaintiff argues that other factors combine to create at the very least a question of fact as to whether the corporate veil should be pierced. Chief among them is that Paddock of the Midwest installed pools that were manufactured with the trade name Paragon Pools. The maintenance manual for the pool involved had the words "Paragon Pool" in large letters across the top. Plaintiff argues that anyone who was aware of a corporation named Paragon Pool Enterprises and that the pool involved in the incident was a Paragon Pool might reasonably conclude that Paragon Pools Enterprises was a corporation involved in the sale and installation of the pool.

Plaintiff contends the trial court erred in granting defendant's summary judgment motion because of the doubt that exists concerning the independence of the two corporations. Summary judgment is a drastic measure and should only be allowed when a moving party's right to it is clear and free from doubt. *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358, 543 N.E.2d 1304, 1307; *Murphy v. Urso* (1981), 88 Ill. 2d 444, 464, 430 N.E.2d 1079, 1088.

Defendant argues initially that plaintiff is barred from alleging an "alter ego" theory on appeal in an effort to pierce the corporate veil because he did not allege this theory in his complaint. (*South Side Bank v. T.S.B. Corp.* (1981), 94 Ill. App. 3d 1006, 419 N.E.2d 477; *Be-*

*velheimer v. Gierach* (1975), 33 Ill. App. 3d 988, 992, 339 N.E.2d 299, 303.) Plaintiff does not address this portion of defendant's argument.

■ In *Bevelheimer* the plaintiff, who was corporate president, brought suit individually and on behalf of the corporation. The defendant contended that plaintiff was not a proper plaintiff to which plaintiff responded that he and the corporation were one. On appeal the court held that he had not alleged sufficient facts to establish the identity or the relationship. (*Bevelheimer*, 33 Ill. App. 3d at 992.) The court in *Bevelheimer* stated that a corporation is a separate entity from its shareholders and those who seek to have the court apply an exception to that rule must state a claim for such relief in their pleadings, and they carry the burden of proving actual identity (*Bevelheimer*, 33 Ill. App. 3d at 993; *South Side Bank*, 94 Ill. App. 3d at 1010) or a misuse of corporate form which would result in a fraud. *Divco-Wayne Sales Financial Corp. v. Martin Vehicle Sales, Inc.* (1963), 45 Ill. App. 2d 192, 197, 195 N.E.2d 287.

In *South Side Bank* plaintiff, who was a shareholder only in the parent company, sued to compel production of the corporate records of the parent company and of its subsidiary. The appellate court held that the plaintiff had no right to inspect the records of the subsidiary unless he could prove that the subsidiary was the alter ego of the parent corporation, and the trial court's dismissal of the plaintiff's suit to compel was affirmed. (*South Side Bank*, 94 Ill. App. 3d at 1009-10.) The court held that one who seeks to have the courts apply an exception to the rule of separate corporate existence must seek that relief in his pleading and carries the burden of proving actual identity or misuse of the corporate form resulting in a fraud on him. *South Side Bank*, 94 Ill. App. 3d at 1010.

Defendant argues that this court cannot reasonably find Paragon and Paddock of the Midwest are a single identity. Some element of unfairness, something akin to fraud or deception or the existence of a compelling public interest must be present in order to disregard the corporate fiction. *Bevelheimer*, 33 Ill. App. 3d at 994.

Defendant concedes that the officers, directors and owners were the same for the two corporations and that the companies worked out of the same office space. But defendant contends that this is not enough to pierce the corporate veil because other formalities of corporate ownership were maintained and plaintiff has not alleged facts that would support a showing of fraud. Defendant argues that the two corporations were in different businesses and were not structured to circumvent the rights of creditors.

Defendant distinguishes *Holland* on the facts by noting that Holland had done advertising for the candy which was made by the manufacturer corporation and then distributed by Candy Shoppes. Both companies were solely owned and managed by one woman who ran both out of a single office. The manufacturer provided candy on consignment to the Candy Shoppes, reserving title to the merchandise. Defendant also distinguishes *Federal Insurance Co.* on its facts where one company was clearly the successor to the original corporation because of its financial difficulties with a creditor. Defendant notes that Paragon was not a successor corporation to Paddock of the Midwest and that the two corporations existed simultaneously in separate unrelated businesses. At no time did one company take over the other or own stock in the other.

Plaintiff acknowledges that Paragon was incorporated to hold title on a patent and that the patent expired in 1984 or 1985. The corporation was then involuntarily dissolved by the State of Illinois. We note that Atlas testified in his deposition that Paddock of the Midwest filed for bankruptcy protection in June 1980, a month before plaintiff was injured, and the bankruptcy case was terminated in December 1983. Atlas, the sole owner of the two companies, did incorporate another business in August 1983 which bought the physical assets of Paddock of the Midwest but did not assume Paddock's liabilities and was in the business of the manufacture and installation of pools and related accessories.

■ Nothing in these facts provides evidence of scheming on the part of defendant to commit a fraud on potential creditors of Paragon and Paddock of the Midwest. Plaintiff does not allege a mixing of corporate assets or underfunding of one company to benefit the other. Plaintiff does not allege a failure to comply with corporate formalities.

We need not reach the issue of plaintiff's failure to plead the alter ego theory in his complaint since plaintiff has failed to preserve sufficient evidence to justify piercing the veil of the separate corporate identities of Paragon and Paddock of the Midwest.

We must assume that here the complaint was filed against the entity the plaintiff believed was the proper party. Four and one-half years later the defendant raised the issue of improper party defendant. The plaintiff could not be expected to plead something of which he was presumably unaware initially.

■ Summary judgment is proper if, from the pleadings and supporting documents on file, plaintiff fails to establish an element of the cause of action. (*Pyne*, 129 Ill. 2d at 358.) When viewed in the light

most favorable to plaintiff, we believe no set of facts can be pled or proven to find defendant liable. Therefore we conclude the court properly granted defendant's motion for summary judgment.

Finally, plaintiff contends that defendant's "extraordinarily long," 4½-year delay in asserting its defense barred or estopped defendant from raising its defense that the wrong corporation has been sued.

Paragon filed its appearance in July of 1985 and moved for summary judgment in December of 1989. Plaintiff argues that Paragon was "obviously" aware of this defense from the inception of the case and could have presented it by way of a motion under section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) or as an affirmative defense. Plaintiff adds that Paragon alone knew that the pool was installed by Paddock.

Plaintiff admits it cannot cite authority to support its argument of estoppel or waiver but refers us to three other types of cases in which the courts barred a defendant from using a defense because of a delay in presenting the motion. *Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 146-47, 478 N.E.2d 384, 389; *Peoples Gas Light & Coke Co. v. Austin* (1986), 147 Ill. App. 3d 26, 35, 497 N.E.2d 790, 797; *Lovell v. Hastings* (1973), 11 Ill. App. 3d 221, 223, 296 N.E.2d 608, 610.

In *Bell*, the supreme court considered two cases consolidated on interlocutory appeals in which the circuit court denied a railroad company's motion to dismiss the two cases on the ground of *forum non conveniens*. Plaintiffs argued on appeal that defendant had waived its right to file such a motion because defendant's motions asking the circuit court to decline jurisdiction were filed 32 and 39 months after the original complaints were filed. The supreme court upheld the trial court's denial of the railroad company's motions in both cases but refused to adopt a *per se* rule that would set a specific time in which a defendant must ask the court to deny jurisdiction. The court held that a delay in the filing of a *forum non conveniens* motion should be one factor a court weighs when considering such a motion. *Bell*, 106 Ill. 2d at 146-47.

In *Peoples Gas Light & Coke Co.*, the court stated in *dicta* that a defendant may have waived her right to object to tardy service of process when she waited 19 months before objecting to plaintiff's lack of diligence. Supreme Court Rule 103(b) provides that if a plaintiff lacks reasonable diligence in obtaining service on a defendant, the action may be dismissed without prejudice. (134 Ill. 2d R. 103(b).) The court also stated that where a defendant delays in raising objections under Rule 103(b) and participates in discovery for the purpose of pre-

paring a defense, then he waives his right to object to plaintiff's lack of diligence in serving him. *People's Gas Light & Coke Co.*, 147 Ill. App. 3d at 36.

In *Lovell*, the court held that defendant's participation in an ongoing action, coupled with a 125-day delay by defendant to file a Rule 103(b) motion alleging lack of diligence by plaintiff in serving process on defendant, constituted a waiver. *Lovell*, 11 Ill. App. 3d at 223.

Defendant argues that plaintiff's reliance on these three cases is misplaced because none of them involves the waiver of a right to file a motion for summary judgment. Defendant distinguishes *Bell* by noting that it dealt with a procedural defense, *forum non conveniens*, and not with a question on the merits of the case. In addition, the holding in *Bell* has been superseded by the adoption of Supreme Court Rule 187, which requires that a motion to dismiss based on *forum non conveniens* be filed no later than 90 days after the last day allowed for filing of a party's answer (134 Ill. 2d R. 187). Defendant distinguishes the two other cases cited by plaintiff, *Lovell* and *Peoples Gas Light & Coke Co.*, on the ground that they too dealt with diligence in service of process, a procedural defense.

Defendant argues further that plaintiff is in error when he contends that only the defendant knew who installed the pool. Defendant contends that plaintiff could have, but failed to, undertake discovery or an investigation on his own to determine the proper defendant. *Thomson v. McDonald's Inc.* (1989), 180 Ill. App. 3d 984, 536 N.E.2d 760.

In *Thomson* the court held that McDonald's did not fraudulently conceal the true owners of a McDonald's franchise by failing to comply with discovery in a timely manner. In *Thomson*, plaintiff sued the corporation after slipping on ice at a McDonald's restaurant. In its answer, McDonald's stated that it did not own or control the premises where plaintiff was injured. Subsequently, McDonald's failed to timely comply with plaintiff's discovery requests which plaintiff contends ultimately provided her with information on the true identity of the restaurant owners. When McDonald's did provide discovery answers with this information, the statute of limitations had passed for filing suit against the true owners. The appellate court found McDonald's was not obligated to do anything more than it did. The court stated that the silence of a defendant accompanied by a plaintiff's failure to discover the cause of action does not constitute fraudulent concealment. *Thomson*, 180 Ill. App. 3d at 986.

■ Defendant argues that plaintiff is attempting to do the same thing here by imposing on defendant an affirmative duty to assist

plaintiff in the investigation of his case. Defendant argues that he denied plaintiff's allegations in his answer to the complaint, as in *Thomson*, and is under no further obligation to disclose the proper party to be sued. Defendant argues that plaintiff should not now be able to claim defendant is estopped from raising its defense when plaintiff was put on notice four years earlier but took no steps to discover the correct entity to sue.

Finally, defendant argues that plaintiff has not been prejudiced by the 4½-year span between the time defendant filed an appearance, July of 1985, and when defendant filed its motion for summary judgment, December of 1989. Defendant directs the court to its answer to plaintiff's complaint filed September 16, 1985, wherein defendant denied installing or selling the swimming pool and filter system that allegedly caused plaintiff's injuries. Defendant argues that it was served with summons more than four years after the occurrence and long after a new defendant could have been brought into the suit by reason of the expiration of the statute of limitations.

We believe defendant's arguments are sound. To find otherwise would permit a defendant to be held liable for something he did not do simply because he failed to turn over information on the identity of the actual tortfeasor. It makes no sense to then conclude that if the defendant sued was not the proper party defendant and therefore potentially liable at the onset of the litigation, the mere passage of time from service of summons on him to the filing of his motion for summary judgment based on plaintiff's failure to sue the proper party defendant in some way now makes him liable.

We find that the defendant is not estopped and did not waive its right to present its defense that the wrong corporation had been sued.

We hold that the trial court properly granted defendant's motion for summary judgment and affirm the trial court ruling.

Judgment affirmed.

EGAN and McNAMARA, JJ., concur.